**C.A. No. 14-16139**

**In the**

**United States Court of Appeals**

**For the Ninth Circuit**

---

L.J., a minor, et al.,

*Plaintiffs-Appellants*

vs.

PITTSBURG UNIFIED SCHOOL DISTRICT and LINDA K. RONDEAU,

in her official capacity as Superintendent of the Pittsburg Unified School District

*Defendants-Appellees*.

---

Appeal From The United States District Court,

Northern District of California, Case No. 3:13-cv-03854-JSC

# APPELLANTS' RESPONSE TO APPELLEES' PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

Jean M. Adams, Esq (CA Bar No. 138458)
ADAMS ESQ, a Professional Corporation
1300 Clay Street, Suite 600
Oakland, CA 94612
Tel: 510-832-6000/Fax: 510-832-3099
Email: jmurrelladams@adamsesq.com

Attorney for Appellants

# TABLE OF CONTENTS

I. Neither Rehearing nor *En Banc* Review is Warranted……….…..….……...1

II. The Opinion Accords with Circuit Precedent and Rejects Impermissible Barriers to Idea Eligibility……………..……………………………….……………...1

III. The Panel's Eligibility Analysis is Consistent with Ninth Circuit Authority……………………………………………………..……………...4

IV. The Panel Refined the "Snapshot rule" by Applying Conforming Rationale to Find Eligibility Determinations in May and October 2012 were Clearly Erroneous…………………………………………………………………….6

V. The Panel did not Consider a Heightened Standard for Educational Progress in its Eligibility Determination…………..…………………………….……....10

VI. The panel Reversed the District Court's Decision Under the Clear Error Standard…………..…………………………………………………………....12

VII. The Opinion is Based upon the Record and is Factually Accurate……..…...14

a. Paraeducator Aranio was hired, trained and supervised by the school district's special education behaviorist pursuant to a settlement agreement in a special education due process case……………………………..….14

b. Paraeducator Aranio did not "Fade Back" ...………………………..….16

c. Fourth grade teacher Hatfield had training and experience teaching students with disabilities such as L.J.'s…………………………………17

d. L.J. Continued to have troubling behavioral and academic issues during the Snapshot period……………………………………………………..17

VIII. Conclusion……..………………………………………………………19

## TABLE OF AUTHORITIES

**CASES:**

*Adams v. State of Oregon*,

195 F. 3d.1141, 1149 (9th Cir. 1999)……………………………………7

*Amanda J. v. Clark County Sch. Dist.*,

267 F. 3d 877, 887-88 (9th Cir. 2001)……………………………..…11, 12

*Armster v. United States Dist. Court*,

800 F. 2d 1347, 1355 n.9 (9th Cir.1986)…………………………….….....1

*Doug C. v. Haw. Dept. of Educ.*,,

720 F. 3d f 1038, 1043 (9th Cir.2013)……………..…………….………11

*Hart v. Massanari*,

266 F. 3d, 1155, 1172 n. 29 (9th Cir. 2001)……….……………………1

*Hood v. Encinitas Union Sch. Dist.*,

485 F. 3d 1099 (9th Cir. 2007) ……………..…………………….………4

*J.G. v. Douglas Cty. Sch. Dist.*,

552 F. 3d 786, 793 (9th Cir. 2008).………………………………………12

*R.B. v. Napa Unified Sch. Dist.*,

496 F.3d 932 (9th Cir. 2007)………………………………….…..………6

# TABLE OF AUTHORITIES
# (continued)

**CASES:**

*Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley*,

458 U.S. 176, 206-07 (1982)……………………………………..………2

**STATUTES AND REGULATIONS:**

FEDERAL

34 C.F.R. § 300.39 (a)(1)………………………………………………………..2

20 U.S.C. § 1400 (d) (1) (A) ……………………………………..…...............3

20 U.S.C. § 1401 (3) (A)……………………………………………………...3

34 C.F.R. § 300.39 (a)(1)……………………………………..……...............13

STATE:

Cal. Ed. Code § 56026…………………..………………………………….........3

## I. NEITHER REHEARING NOR *EN BANC* REVIEW IS WARRANTED.

"[P]etitions for rehearing serve the limited purpose of enabling a Panel to correct an error in its decision." *Armster v. United States Dist. Court*, 806 F.2d 1347, 1355 n.9. (9th Cir. 1986). "An *en banc* hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) *en banc* consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). Cases are not taken *en banc* "just to review a Panel opinion for error, even in cases that particularly agitate judges." *Hart v. Massanari*, 266 F.3d 1155, 1172 n.29 (9th Cir. 2001). Appellees Pittsburg Unified School District and Linda Rondeau (the "School District") have failed to show that either is warranted here.

## II. THE OPINION ACCORDS WITH CIRCUIT PRECEDENT AND REJECTS IMPERMISSIBLE BARRIERS TO IDEA ELIGIBILTY.

The critical issue before the Panel was whether a school district can circumvent IDEA eligibility of a child known to have three disabling conditions, and thereby nullify corresponding procedural safeguards, by mislabeling the child's extensive individualized services at school as mere general education accommodations.

The Panel's holding is based upon conceded facts, that the child has a specific learning disability, is emotionally disturbed and is otherwise health-impaired under the IDEA, and resolved the "critical issue" of whether L.J. demonstrated a need for special education services. Opinion at 14. Applying controlling statutory and case law, including the Supreme Court's analysis in *Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982), the Panel concluded that L.J. was eligible to receive IDEA benefits. To reach its conclusion, the Panel interpreted IDEA regulations to determine whether L.J. needed, and to some extent received, "specially designed instruction" to meet his unique needs caused by his three disabling conditions, rather than "general education" accommodations. Opinion at 16-17, *citing* 34 CFR section 300.39(a)(1). The Panel identified examples from an array of services that constituted "specially-designed instruction" that the School District had mislabeled as accommodations. L.J.'s *de facto* special education services are well-documented by the record and support the Panel's rationale and conclusion. The Panel also set forth facts that here precluded the School District's denial of IDEA procedural safeguards and eligibility based upon its erroneous label or the location where L.J. received the services.

The School District claims that the Panel--relying upon "clear mistakes of fact" coupled with "misapplication and misinterpretation" of law—unwittingly

unleashed a "sweeping and drastic" expansion of special education law that "profoundly" alters how and to whom special education eligibility must be granted. The Panel actually followed settled law and precedent to reject the School District's argument for erecting new barriers to the IDEA's fundamental purpose of ensuring that disabled children have available to them necessary special education and related services. Opinion at 17-18; 20 U.S.C. §1400(d)(1)(A).

The Panel reasoned that, where a child is otherwise deemed to have a qualifying disability, he is eligible for special education under the IDEA if he requires specialized services, not provided through the regular school program, tailored to his unique needs caused by his disability. Opinion at 13; 20 U.S.C.§1401(3)(A); Cal. Educ. Code §56026. Applying the IDEA and corresponding California law, the Panel correctly concluded that L.J. was receiving specialized services, designed for him, to address needs arising from his disabilities. Opinion at 17.

The Panel identified compelling facts and exercised *de novo* review to correctly interpret IDEA regulations and distinguish L.J.'s services as special education. Opinion at 16-18. Although the Panel identified examples of special education services L.J. received: a 1:1 paraeducator; specially designed mental health services; a teacher with expertise in teaching disabled students like L.J.; and,

clinical oversight by the School District's top behaviorist, its holding properly construes the IDEA.

The Opinion closes a potential loop-hole, devised and utilized by the School District to circumvent the IDEA and bar disabled students from special education eligibility. The Opinion prevents school districts from substituting their unilaterally determined and sporadic specialized services, designated as "general education" accommodations, for services and supports mandated with IDEA eligibility and protected though its procedural safeguards.

## III. THE PANEL'S ELIGIBILITY ANALYSIS IS CONSISTENT WITH NINTH CIRCUIT AUTHORITY.

The School District reargues its misapplication of *Hood v. Encinitas Union Sch. Dist.*, 485 F.3d 1099 (9th Cir. 2007). In *Hood*, this Court determined that a student made adequate progress with categorical general education services in the regular education classroom so as to not require special education, even assuming the student had a specific learning disability (SLD). The Court in *Hood* did not consider or address whether the categorical services the student received constituted "specially designed instruction." Therefore, its holding is distinguished from the Panel's holding which considered a different issue. The Panel also followed the rationale in *Hood*, but reached a different conclusion as to eligibility based upon the significantly different facts and a different legal question.

As in *Hood*, the Panel considered whether or not L.J. had a qualifying disability. *Hood* at 1105-1106, 1109-1110. It affirmed that L.J. has three qualifying disabilities falling under the classifications of Emotionally Disturbed, Otherwise Health Impaired, and Specific Learning Disability. Opinion at 14.

The Court in *Hood* based its eligibility determination on consideration of whether the student needed special education services, assuming a qualifying disability, finding her categorical services, technology organizer, teacher's check for homework and one-step instructions were sufficient to render special education services unnecessary. Here, the Panel also looked to whether L.J. demonstrated a need for special education services during the relevant time period. However, the Panel found substantial evidence in the record to determine that L.J. demonstrated a need for specially designed instruction tailored to his disability needs. Thus the Panel's fact based analysis is consistent with *Hood* and does not impair uniformity with this Court's decision in *Hood*.

The School District seeks an interpretation of *Hood* that would permit it to erect a barrier to IDEA eligibility by substituting services labeled as "accommodations" for the special education services disabled children need. However, *Hood* is not authority for distinguishing special education services from general education accommodations because the issue was not presented in that case. The Panel's decision provides appropriate and necessary clarification that,

educational services which are adapted to a disabled child's disability based needs and enable the child to benefit from their education constitute special education, and the effectiveness of such services can demonstrate the disabled child needs special education.

Similarly, this Court's holding in *R.B. v. Napa Unified School District*, 496 F.3d 932, (9th Cir. 2007), is distinguished from the Panel's holding on the facts. In *R.B.*, the child did not have a disability under the IDEA. *Id.* at 945-946 (While R.B. engaged in inappropriate behavior, the behavior did not constitute a qualifying disability). The Court did not consider the meaning of "specially designed" instruction under the IDEA. Thus, the Panel's decision could not conflict with the decision in *R.B.* The Panel's decision clarifies a question under IDEA that has not been addressed by this Court. Rehearing is not warranted.

## IV. THE PANEL REFINED THE "SNAPSHOT RULE" BY APPLYING CONFORMING RATIONALE TO FIND ELIGIBILITY DETERMINATIONS IN MAY AND OCTOBER 2012 WERE CLEARLY ERRONEOUS.

Despite its rendition of "Background" facts, the Panel correctly confined its determination of L.J.'s eligibility to information reasonably available to the parties at the time of the May 2012 and October 2012 IEP meetings. The Panel extrapolated from Circuit precedent, explaining the appropriateness of the

eligibility determination depends upon whether the IEP team took into account relevant, available information at that time. Opinion at 15, citing *Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). The critical "snapshot" period is undisputed and the Panel properly reversed the district court.

The School District conflates the Panel's recitation of Background facts with its analysis of L.J.'s eligibility during the snapshot period. However, the Opinion provides a succinct and factually accurate account of the history of the case based upon settled or otherwise undisputed facts in the record. Opinion at 5-11. Post-snapshot facts are nevertheless well-documented including the record of the administrative hearing supplemented by appropriate declarations from L.J.'s mother [Dkt. 56-2] legal counsel [Dkt. 44-1, 56-1]; fifth grade principal Cata Fitzgerald [Dkt. 49,49-1,49-2]; and School District Special Education Director Deborah Daly who admitted that "…during the 2013/2014 school year, in which L.J. was in the 5th grade, he has not received any services through the district, which may account for plaintiff's worsening behavior". [Dkt. 48 at paragraph 10] The Panel, also references the previously withheld February 15, 2013 mental health report. [ER: 740-762] Opinion at p.10, Significantly, the School District even now does not dispute the veracity of these Background facts. Although the School District sought to suppress some of this information, the district court declined to grant any motion to strike and acknowledged that these more recent

facts were not in dispute in concluding that: "By all accounts, Student's condition is troubling and, despite best efforts on all sides, he may be backsliding". [ER: 29:26-28]

The district court focused on L.J.'s special education eligibility by looking at L.J.'s behavior, academic progress, and social needs at the time of the IEPs, in addition to the nature of the services he was receiving. Opinion 19-21. Undisputedly, the district court, focusing on the snapshot period, correctly determined that L.J. had multiple qualifying disabilities and therefore satisfied the first prong of the eligibility requirement. (*Id*.) However, the Panel concluded that the district court "clearly erred" when it determined that L.J. did not need special education because he was performing satisfactorily in *general education* during that time frame. Opinion at 17-19. The district court mistook special services, including mental health counseling, behaviorist services and a 1:1 paraeducator, as mere general education when they were not. Opinion at 17.

Interpreting the IDEA's regulatory definition, the Panel examined the same services during the same time frame as the district court. Specifically, 1:1 direction, specially designed mental health services, extensive interventions by a School District behavior specialist, persistent teacher oversight, additional time to complete classwork or tests, shortened assignments, discretion to leave the classroom at will, or the option to complete classwork or tests in other rooms or

with one-on-one support, or a teacher with special education experience. Opinion at 17-19. The Panel properly construed the IDEA's definitions to find that the district court "clearly erred" in mischaracterizing all of these individualized accommodations as general education available to all students, rather than as special education provided to students with disabilities. Opinion at 18-19.

The Panel similarly reversed the district court's finding that L.J. did not require specialized assistance because he was no longer exhibiting significant behaviors or academic challenges. Again, looking to L.J.'s behaviors and disability-related needs during the snapshot period, the Panel concluded that, although improved due to the special education services that he was by then receiving, L.J. continued to exhibit behavioral and academic difficulty. All teachers reported that his disability-related classroom absences hurt his academic performance. [ER 674, 676, (Report Cards);1291-1292(Gonzales);1212-1213(Hatfield);1324-1326(Ramos)] L.J. threatened and attempted to kill himself on three occasions in 2012. In the fall, he frequently acted out at school such as throwing rocks at and threatening to kill the school principal. He also continued to have needs associated with his medication and treatment of his mood disorder as repeatedly confirmed by his teacher and school counselors. Opinion at 21. The Panel correctly concluded that the district court erred in discounting these facts as they demonstrated that L.J. still needed special education services. *Id.*

## V. THE PANEL DID NOT CONSIDER A HEIGHTENED STANDARD FOR EDUCATIONAL PROGRESS IN ITS ELIGIBILITY DETERMINATION.

The School District argues that "the district court correctly found . . . L.J. was progressing at or above grade level" and therefore rehearing is warranted. Misinterpreting the Opinion, it claims the Panel applied a "heightened standard" to find L.J.'s educational progress was insufficient, suggesting the Opinion conflicts with settled authority. Petition at 11-12. However, the Panel neither held nor considered whether L.J.'s progress was sufficient to render special education unnecessary as L.J.'s progress was not in dispute.

The Panel noted that L.J. made progress during the snapshot period "[w]ith medication and specially designed instruction" but "continued to have troubling behavioral and academic issues . . ." Opinion at 19. The Panel identified multiple examples of L.J.'s ongoing need for special education during the snapshot period noting for example, "L.J. could not have been doing well . . . at school because he was in extended care at a psychiatric hospital." Each of the Panel's factual findings are supported by ample evidence in the record which demonstrated the district court's clear error.

The Panel's holding addressed L.J.'s eligibility stating, progress he made "must at least, in substantial part be attributed to" settings where multiple [special education] services were being provided. Opinion at 19. Here, consistent with

Circuit authority applying *Amanda J.*, the Panel properly concluded that the School District denied L.J. a FAPE by multiple procedural violations, including failure to conduct a health assessment and withholding material school records. The School District further denied L.J. a FAPE by preventing informed parent consent regarding educational decisions and causing L.J. to lose educational benefit. Opinion at 23. The Panel held, "[t]he district court erred when it dismissed [as harmless error] the School District's failure to conduct a health assessment, "depriving L.J. of an educational benefit." Opinion 23-24, *citing Doug C. v. Haw. Dept. of Educ.*, 720 F.3df 1038, 1043 (9th Cir. 2013). The School District misconstrues the Panel's decision, fabricating nonexistent conflict with Circuit authority.

There is no factual dispute that L.J. made educational progress, but likely would have done better with consistency of specially designed instruction delivered through an IDEA compliant IEP as the Panel stated. Opinion at 23-24. It also is undisputed that L.J.'s academic achievement falls below his intellectual ability in the absence of individualized services. [ER: 23:12-13] Still, the Panel could not and did not apply any differing standard of benefit to determine L.J.'s eligibility or the School District's denial of a FAPE. Instead, it held, like other authority that, we cannot know how well L.J. would have done with appropriate assessment and services delivered through an IEP. Opinion at 23-24.

## VI. THE PANEL REVERSED THE DISTRICT COURT'S DECISION UNDER THE CLEAR ERROR STANDARD.

The School District incorrectly assert's that the Opinion is based upon alternative factual findings in violation of the "clear error" standard. Again, the School District misstates the Panel's findings.

The Panel articulated and applied the proper standard of review. It reviewed the district court's findings of fact for clear error and the conclusions of law *de novo*. Opinion at 11-12, citing *J.G. v. Douglas Cty. Sch. Dist*., 552, F.3d 786, 793 (9th Cir. 2008). It gave "due weight" to the ALJ's special education decision and acknowledged its obligation to refrain from substituting its own notions of educational policy for those of the school authority it reviews. *Id*., citing *Amanda J. v. Clark Cty. Sch. Dist*., 267 F.3d 877, 887-88 (9th Cir. 2001). However, the Panel reversed the district court's conclusion of law that L.J. was not eligible for special education because L.J. relied upon medications and specially designed instruction to make temporary gains. Opinion at 15-19. Accordingly, L.J. was not performing satisfactorily absent special education services and on the basis of the general education curriculum. Opinion at16-17.

The Panel was careful to explain that this "was clear error because L.J. was receiving special services, including mental health counseling and assistance from a one-on-one paraeducator" which are not services offered to general education students. Opinion at 16-18. Because of this very important distinction, the Panel

reversed the district court's statutory interpretation of "special education" under the IDEA. Opinion at16-17, *citing* 34 C.F.R. §300.39(a)(1). After careful analysis of the facts and IDEA regulations, the Panel correctly concluded that "the district court clearly erred" by mischaracterizing all of L.J.'s individualized accommodations and services as "general education" available to all students, rather than as special education provided to students with disabilities. Opinion at 18. Moreover, the Panel's contrary factual findings are warranted by clear error.

Until now, the School District conceded that L.J.'s 1:1 behavior aide was a paraeducator, specially-trained and placed with L.J. as part of a special education settlement agreement. The School District never challenged and actually elicited the testimony of L.J.'s fourth grade teacher that he was cherry-picked by the School District due to his experience in teaching special education students with disabilities such as L.J.'s. [1210-1211] Nor is it disputed that L.J. made academic and behavioral gains during the fourth grade. Paraeducator Aranio and Teacher Ramos' testimony and contemporaneous independent observations directly contradicted the district court's finding that L.J.'s paraeducator "successfully faded back" during the third grade, and thus its factual finding was clearly erroneous. [ER1594;1313-1314;1339-1340] To the extent the issue is factual, substantial evidence supports the Panel's conclusion that the district court clearly erred by

mischaracterizing L.J.'s specialized services as general education accommodations.

## VII. THE OPINION IS BASED UPON THE RECORD AND IS FACTUALLY ACCURATE.

The School District challenges the Panel's factual findings as inconsistent with the record on appeal or otherwise erroneous. It points to four instances of the Panel's purported "crucial factual mistakes" and argues that: (1) L.J.'s 1:1 paraeducator was not a specially-trained staff member assigned to work with special education students; (2) the 1:1 aide successfully faded-back; (3) the record is "devoid of any evidence" that L.J.'s fourth grade teacher was experienced in special education; and (4) L.J had no academic issues at all during the relevant time period. The Panel did not err in its recitation of the facts, each of which is amply supported by the record.

### a. Paraeducator Aranio Was Hired, Trained and Supervised by the School District's Special Education Behaviorist Pursuant to a Settlement Agreement in a Special Education Due Process Case.

For the first time, the School District contends that L.J.'s 1:1 behavioral aide was not a paraeducator, and, therefore he could not have been a "specially-designed" intervention. However, the School District throughout the record repeatedly referred to Mr. Aranio as a paraeducator, including at the administrative hearing [ER 972:21, 976:15, 977:12] and in its closing brief [ER 451:9]. Jan

Tomsky, the School District's lead attorney, specifically referred to "Brian, the paraeducator" [ER 1009:2] Mr. Aranio was identified as paraeducator in multiple assessments relied on by the School District. [ER 600 ("the addition of a fulltime paraeducator who served as behavioral coach"); 627 ("Mr. Brian Ariano (sic) 1:1 Paraeducator" )] and most recently, the Answering Brief. [AB at 20]. Regardless of his title, it is undisputed that Paraeducator Aranio was hired by the School District's top behaviorist, Tracy Catalde, who was at all relevant times an employee of the special education department and reported directly to Special Education Director Debbie Daly. [ER 1125:18-22]

> Q Ms. Daly, this morning I just happened to be in
> the superintendent's office and I saw an org chart and it
> showed Mr. Catalde reporting directly to you. Is he a
> direct report to you?
>
> A Yes.

It is undisputed that Behaviorist Catalde personally designed a 9-hour training session for L.J.'s behavioral aide who implemented prescribed ongoing interventions. [ER1587-1588;1590-1592;1603] After Catalde trained L.J.'s aide, he closely supervised him to ensure L.J.'s interventions maintained fidelity to the new and improved behavior plan, which included adapting the method and delivery of L.J.'s instruction. [ER693-694]

The School District does not dispute that this intervention was designed for L.J. as part of a settlement agreement to address his unique needs arising from his multiple disabilities. Instead, it now claims Paraeducator Aranio was merely providing "non-instructional" direction. The School District raises this new factual argument that L.J.'s enumerated specialized services were "*non-instructional*" which allowed L.J. to succeed in general education. The School District cites no authority or evidence in the record in support of this proposition. Paraeducator Aranio testified that he was an "instructional" aide. [ER 1586:1-14] Moreover, it concedes that Paraeducator Aranio would "ask" or "encourage" L.J. to complete homework and would "read in the library" with him. Petition at 8, footnote 7. Whether instructional or directional is of no consequence. Either way, the Panel correctly concluded that having a 1:1 behavioral aide, trained and supervised by the School District's top behaviorist is not a general education accommodation. Opinion at 17.

b. **Paraeducator Aranio did not "Fade Back".**

Paraeducator Aranio and Teacher Ramos testified that Aranio remained with L.J. through the end of the year at least until his May 2012 psychiatric hospitalization and was within "arm's length". [ER1594;1313-1314;1339-1340] He did not "fade back" as the School District has repeatedly asserted after the fact. Moreover, even if Paraeducator Aranio had "successfully faded back" in third

grade, it was only because that specially-designed intervention was "successful" in meeting L.J.'s disability-related needs in the first instance.

**c. Fourth Grade Teacher Hatfield Had Training and Experience Teaching Students with Disabilities Such as L.J.'s.**

The School District misstates the Panel's characterization of L.J.'s fourth grade teacher Aaron Hatfield as a "special education" teacher. The Panel was careful to describe him as "a teacher with special education experience". Opinion at 18. The Panel's precision in identifying the teacher's qualifications demonstrates its extensive knowledge of the nuances in the record. The record demonstrated that the School District selected the fourth grade teacher for L.J. because of his extensive experience teaching students with severe behavior challenges such as L.J.'s. [ER: 1210-1211]. Teacher Hatfield never claimed to be special education-credentialed. Neither did the Panel assert or assume that he was.

**d. L.J. Continued to Have Troubling Behavioral and Academic Issues During the Snapshot Period.**

Seeking further review, the School District reargues that L.J. had no "academic" issues during the relevant time frame and contends the Panel erred by taking them into consideration. The Panel found, L.J. had "troubling behavioral and academic issues" during the snapshot period. Opinion at 19. The Panel proceeded to enumerate behavioral issues including: threatening and attempting to kill himself the day before the May 30, 2012 IEP meeting and being placed in

extended care at a psychiatric hospital; again attempting suicide on July 17 and on July 26, 2012; being suspended for throwing rocks and threatening to kill the principal; being banned from the school bus because of refusal to follow the driver's directions; and the ongoing need for medication and treatment for mood disorders and ADHD. Opinion at 19-21. Academically, L.J. missed at least six school days due to his confinement in a psychiatric hospital, his teachers all reported that his classroom absences hurt his academic performance. L.J.'s fourth grade teacher reported that his functioning declined in the absence of medication or when it had no mitigating effects. [ER755] These factual findings are well-supported by the record. Rehearing is not warranted by the School District's desire to reargue its version of contrary facts.

The Panel's Opinion does not conflict with settled authority that analyzes a student's academic benefit to determine the need for special education. All parties agree that L.J. made academic, social and behavioral gains once the School District provided specially-designed classroom interventions under the settlement agreement, under the direction and control of the special education department. The School District has also conceded that medication was a mitigating factor. [Answering Brief at 46] L.J.'s reported gains were only as compared to the lack of any progress without this specially-designed instruction.

## VIII. CONCLUSION

Rehearing is not necessary to clarify what is already clear under the law and the School District failed to show that further review is warranted here. Instead, it misconstrued the Opinion and rehashed old arguments to delay enforcement of the Panel's September 1, 2016 mandate that the it provide L.J. with an IEP and comply with the IDEA's procedural safeguards. L.J. continues to struggle and his mother remains deprived of the important rights and protections of the IDEA The Petition should be denied and this case allowed to proceed immediately to district court for enforcement proceedings.

Dated: October 21, 2016

Respectfully submitted,

/s/ Jean Murrell Adams

Jean Murrell Adams
ADAMS ESQ, a Professional Corp.
1300 Clay Street, Suite 600
Oakland, CA 94612
(510) 832-6000

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rules 35-4 and 40-1because Appellants' Response to Appellees' Petition for Panel Rehearing and Rehearing En Banc contains _**3994**___ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced type face using Word 2010 software in 14-point Times New Roman font.

Dated: October 21, 2016

__/s/ Jean Murrell Adams______
Jean Murrell Adams, Attorney

**CERTIFICATE OF SERVICE**

for

**APPELLANTS' RESPONSE TO APPELLEES' PETITION FOR PANEL REHEARING AND REHEARING *EN BANC***

I, hereby certify that I electronically filed the forgoing with the Clerk of the Court for the United States Court of Appeals for the 9th Circuit Court by using the appellant CM/ECF System on October 21, 2016.

I certify that all participants are participants in this case are registered CM/ECF users and that service will be accomplished by the appellant CM/ECF system.

__/s/ Jean Murrell Adams______
Jean Murrell Adams, Attorney